UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**ERNEST WOODROW BARSTAD,
CHRISTINE RAGAN BARSTAD,**

Debtors.

Case No. 17-60586-13

**MEMORANDUM OF DECISION**

In this Chapter 13 case, Ernest and Christine Barstad ("Debtors") filed a Motion for Sale of Property Free and Clear of Liens, Doc. No. 62 ("Sale Motion").[1]  Chapter 13 Trustee Robert G. Drummond and creditors Glenn Davidson and Tom Ide objected to the Sale Motion.  Doc. Nos. 66, 68.  The matter came on for hearing on November 20, 2017.  After considering the arguments of counsel and the Trustee, the Court requested supplemental briefing.  Those briefs have now been filed.  Doc. Nos. 75–77.  The Court concludes the objections will be sustained and the Sale Motion will be denied.  This Decision explains the Court's reasoning and constitutes the Court's findings and conclusions pursuant to Rules 7052 and 9014.

**BACKGROUND AND FACTS**

The underlying, critical facts are not in dispute.  On June 30, 2016, Debtors entered

---

[1] Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and rule references are to the Federal Rules of Bankruptcy Procedure.

1

into two separate real property buy-sell agreements with Davidson and Ide. They were executed after a real estate auction of 320 acres of real property owned as of such date by Debtors. That property is located at 3401 Dry Gulch Road, Orvando, Powell County, Montana (the "Property"). Davidson and Ide were the successful bidders on two separate parcels comprising the Property. However, Debtors refused to close the sales. Davidson and Ide commenced litigation in Montana state court seeking specific performance of the agreements. Case No. DV-16-68, Montana Third Judicial District, Powell County ("State Court Action"). Debtors counterclaimed and also filed a third-party complaint against the auction company, Albert Burney, Inc. ("Burney"). On June 9, 2017, an order was entered in the State Court Action granting summary judgment to Davidson and Ide, and denying Debtors' summary judgment request. ("State Court Order"). While Debtors contest the present legal effect of the State Court Order given their bankruptcy filing, they do not dispute that it was entered.

The State Court Order addressed numerous contentions. Not all of these need to be discussed by the Court at this time. In material part, the State Court Order held:

> Simply put, the Barstads entered into buy-sell agreements with both Davidson and Ide. The Barstads sold Parcel 1 to Davidson and Parcel 2 to Ide. The uncontroverted extrinsic evidence clarifies what Parcel 1 and Parcel 2 mean. Davidson and Ide have performed their obligations pursuant to the buy-sell agreements they entered into with the Barstads. Specific performance is warranted and Davidson and Ide are entitled to summary judgment. The Barstads' Motion for Summary Judgment must be and is hereby Denied.

*Id.* at 13. After addressing a water right aspect, the State Court Order concluded:

> WHEREFORE, Davidson's Cross-Motion for Summary Judgment and

>    Ide's Cross-Motion for Summary Judgment are Granted and the Barstads'
>    Motion for Summary Judgment is Denied.
>
>    IT IS FURTHER ORDERED, that Davidson and Ide shall submit
>    proposed decrees for specific performance consistent with this Order.

*Id.* at 14.  Debtors' bankruptcy case was filed on June 15, six days after the State Court Order but before specific performance decrees were entered.

Debtors' bankruptcy schedules filed on July 10 assert that the value of the Property is $2,100,000.00.  Doc. No. 16 at 3.  Debtors' proposed chapter 13 plan provides for the sale or refinancing of the Property.  Doc. No. 21 ("Plan") at 1–2.[2]  Despite their allegation of a $2.1 million value, Debtors' Sale Motion proposes to sell the Property to Shannon and Denise Ferguson for $1.0 million through a buy-sell agreement.  The Sale Motion also seeks elimination of the Rule 6004(h) 14-day stay of the effectiveness of any order approving sale, in part basing that request on the desire of Debtors and Fergusons to close a sale, if approved, by December 27, 2017.[3]  The Sale Motion is brought under §§ 1303 and 363(f).  Debtors contend, under the latter provision, that the sale can be ordered "free and clear" of the interests of Davidson and Ide on the ground that those interests are

---

[2] The plan also treats Davidson and Ide as having, by reason of the buy-sell agreements and the State Court Order, "executory contracts," that Debtors propose to reject.  *Id.* at 3.

[3] The agreement between Debtors and the Fergusons was dated August 9, 2017, and expressly referred to the closing date of December 27, 2017.  Doc. No 62-1 at 1–2.  It also reflected Debtors' understanding that an order of this Court was a prerequisite to sale.  *Id.* at 5; *see also* Plan at 2 (acknowledging need for Court approval).  The Sale Motion also anticipated objections from Davidson and Ide and possibly others.  Doc. No. 62 at 1.  Given these facts, the over two-month delay in filing the Sale Motion is not explained.

subject to bona fide dispute under § 363(f)(4).[4]

**DISCUSSION AND DISPOSITION**

Briefing addresses a host of questions and issues. Many of them are integral to the associated adversary proceedings. However, those matters are neither directly nor properly before the Court for decision at this time.[5] Here, the question to be decided is whether the Sale Motion is well taken under § 363(f) and can be granted over the objections of Trustee, Davidson and Ide.

### A.  Property of the Estate

Debtors claim to own the Property. Their schedule A asserts its $2.1 million value and indicates the nature of their ownership interest is "JTWROS" (presumptively "joint tenancy with right of survivorship"). This assertion, standing alone, is not controlling.

"[A]ll legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate. *See* § 541(a). The Code, however, does not

---

[4] In addition to the foregoing, there are other matters pending between these parties. In *Davidson and Ide v. Barstad*, Adv. No. 17-00027, Davidson and Ide seek declaratory relief that their buy-sell agreements are not executory contracts under § 365 (as Debtors assert in, *inter alia*, their chapter 13 plan), and that Debtors are required to comply with the State Court Order. *Id.* at Adv. Doc. No. 1. Debtors answered and asserted a counterclaim. That counterclaim contends the State Court Order constituted a "transfer" that should be determined to be a preference under § 547(b) and, thus, is avoidable. *Id.*, Adv. Doc. No. 12. The counterclaim was answered by Davidson and Ide who raised several defenses, including an exception to preference avoidance under § 547(c). *Id.*, Adv. Doc. No. 13.

*Barstad v. Davidson, et al.*, Adv. No. 17-00030, arose as a result of Debtors removal of two Montana state court actions under 28 U.S.C. § 1452. One is the State Court Action, Case No. DV-16-68, in which Davidson and Ide seek specific performance. The other is Case No. DV-17-12, an action Debtors filed against Davidson, Ide, Burney, and Riverbend Realty, LLC, alleging 17 counts.

[5] An exception is one matter from Adv. No. 17-00030 that was heard on November 20, 2017. It will be addressed by a separate Memorandum of Decision.

presume to define those interests. Instead: "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979). *Womack v. Madrill (In re Madrill)*, 2014 WL 1329284 (Bankr. D. Mont. Apr. 1, 2014), recognized that state law determines, in bankruptcy, the extent of a party's interests in property. *Id.* at *5 (citing *Butner*; other citations omitted). It also recognized that "The bankruptcy estate succeeds to no more interest than the Debtor possessed or had, and the estate takes its interests subject to such conditions." *Id.* (citations omitted). As stated in *Dewhirst v. Citibank (Arizona) (In re Contractors Equip. Supply Co.)*, 861 F.2d 241, 244 (9th Cir. 1988), "Whether a debtor in possession has an interest in property is determined by state law." Similarly, in *California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.)*, 792 F.2d 1400 (9th Cir. 1986), the Court of Appeals held that § 541(a)(1) "merely defines what interests of the debtor are transferred to the estate. It does not address the threshold questions of the existence and scope of the debtor's interest in a given asset. . . . [W]e resolve these questions by reference to nonbankruptcy law." *Id.* at 1402. *Accord In re LaVelle*, 350 B.R. 505, 509–10 (Bankr. D. Idaho 2005) (applying *Farmers Market* and Idaho law to determine the debtors' interest in property).

Such well accepted principles have obvious application here as an issue is raised as to the extent of Debtors' interest in the Property given the pre-bankruptcy buy-sell agreements, the State Court Order granting Davidson and Ide summary judgment for

5

specific performance of those agreements, and relevant Montana law. The issue that is before the Court does not require a conclusive determination of Debtors' interest or that of Davidson and Ide. Rather, the Court must decide whether Debtors may sell the Property under § 363(f) before those interests are adjudicated. As noted earlier, the Sale Motion acknowledges Davidson and Ide "may claim an interest" in the Property and asserts the sale should be "free and clear pursuant to 11 U.S.C. § 363(f), and that any claimed interest of Ide & Davidson attaches to the proceeds of the sale of the property." Doc. No. 62 at 2.

### B. Proposed Sale

The clear weight of authority in the Ninth Circuit prohibits the sale of the Property without questions regarding the extent of the interests of the estate and others being previously adjudicated.[6]

In *Hey v. Silver Beach, LLC (In re Silver Beach, LLC)*, 2009 WL 7809002 (9th Cir. BAP Nov. 3, 2009), the Bankruptcy Appellate Panel considered an order authorizing a sale of vacant beachfront property free and clear of interests asserted by timeshare owners. It held that "the bankruptcy court should have determined the interests of the timeshare owners before authorizing the sale and, for that reason [we] reverse the auction order[.]"

---

[6] This is not a situation where Debtors propose to sell their interest in the Property, whatever it might be, to Fernandez "as is" and without warranting title. *Cf.*, *Stokes v. Duncan (In re Stokes)*, 2013 WL 5313412 (9th Cir. BAP Sept. 23, 2013) (addressing the Montana Bankruptcy Court's approval of a trustee's sale of "the estate's interest, if any" in the subject property, with no representations or warranties regarding that property, including whether it was property of the estate); *Kwai v. Wirum (In re Global Reach Inv. Corp.)*, 2012 WL 933594 (9th Cir. BAP Mar. 20, 2012) (addressing a sale by quitclaim deed of "whatever interest the estate had—even if that interest was nothing—to a buyer with full knowledge of the situation").

*Id.* at *1. The BAP stated:

> Implicit within the statutory grant of authority to sell property under section 363(b), is the requirement that the estate actually have an interest in the property to be sold. For that reason, a bankruptcy court may not allow the sale of property as "property of the estate" without first determining whether the debtor in fact owns the property.

*Id.* (citing *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (9th Cir. BAP 2001)). It noted that a § 363(f) sale "cannot be used to transform property of others into property of the estate" and concluded: "Before the bankruptcy court may authorize a sale under authority of section 363(b)(1), the court must determine whether the estate actually has an interest in the property to be sold." *Id.* at *6–7.

Similarly, the BAP in *The Patti K. Irvine Revocable Trust Dated December 21, 1992 v. Kotoshirodo (In re Lull)*, 2007 WL 7540969 (9th Cir. BAP Dec. 20, 2007), discussed a sale of property approved by the bankruptcy court. It noted that the court, in ordering the sale, avoided ruling on whether the debtor lacked an interest in the property due to an allegedly absolute assignment. The BAP instructed:

> [That] issue should be resolved before the court orders a sale. *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 268–71 (9th Cir. BAP 2005) (holding the court should not authorize sale of real property free and clear of all liens, without first resolving disputed questions whether the debtor, and the chapter 7 estate, had any interest in the property).

*Id.* at *6.[7]

In *Popp*, the BAP stated:

---

[7] *See also In re Wilson*, 2011 WL 2784289 (Bankr. N.D. Cal. July 8, 2011) (holding that a sale of consigned jewelry free and clear of consigners' interests could not occur until the property had been determined to be property of the estate) (citing *Popp*).

> [E]ven before one gets to Section 363(f), Section 363(b), as interpreted by *Rodeo*, requires that the estate demonstrate that the property it proposes to sell is "property of the estate." Darby's objection thus rests on this fundamental level, and we read Ninth Circuit law to permit even unsecured creditors to challenge proposed sales on this ground.
>
> . . .
>
> Indeed, *Rodeo* requires that the Trustee establish that the property to be sold is "property of the estate" before invoking Section 363(f)'s extraordinary power to strip liens.

*Popp*, 323 B.R. at 266 (referring to *Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603 (9th Cir. 2004), *withdrawn and modified by* 126 Fed. Appx. 353, 2005 WL 663421 (9th Cir. 2005)).[8]

As explained further in *Popp*, the Ninth Circuit in *Rodeo* considered the sale of real property that was subject to an ownership dispute, where the debtor had record title to the property being sold, and the appellant claimed to be the equitable owner. To resolve that ownership issue, an adversary proceeding had been commenced, but the bankruptcy court allowed a sale to occur before any dispositive motion or trial in the adversary proceeding. The BAP recognized that *Rodeo* held "[a] bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owned the property[]." The BAP characterized the Ninth Circuit's holding in *Rodeo* as "[a]dopting a rule designed to discourage piecemeal litigation[.]" 323 B.R. at 268. The BAP's conclusion was clear:

> Against this background, *Rodeo* stands for the proposition that courts must

---

[8] The BAP's decision in *Silver Beach, LLC*, cited earlier, also relied on *Rodeo*. *See* 2009 WL 7809002 at *6.

> seek to promote consistent and unfragmented decisionmaking when faced with the need to determine predicate issues such as property ownership in the Section 363 context.

*Id.* at 270.

**CONCLUSION**

The sole issue to be addressed at this time is whether the Sale Motion can be granted. The Court finds and concludes, based on the foregoing authorities, that it cannot. The Objections of Davidson, Ide and the Trustee are well taken and will be sustained, and the Sale Motion will be denied. The Court expresses no opinion on issues the parties have argued or briefed other than those discussed above. An Order in accord with this Decision will be entered by the Court.

DATED: December 1, 2017

TERRY L. MYERS
U. S. BANKRUPTCY JUDGE