# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MONTANA

| | |
|---|---|
| IN RE:<br><br>**ERNEST WOODROW BARSTAD and CHRISTINE RAGAN BARSTAD,**<br><br>     **Debtors.** | **Case No. 17-60586-TLM**<br><br>**Chapter 13** |
| **GLENN DAVIDSON and TOM IDE,**<br><br>     **Plaintiffs,**<br><br>**v.**<br><br>**ERNEST WOODROW BARSTAD and CHRISTINE RAGAN BARSTAD,**<br><br>     **Defendants/Counter-Claimants,**<br><br>**v.**<br><br>**GLENN DAVIDSON and TOM IDE,**<br><br>     **Counter-Defendants.** | **Adv. Case No. 17-00027-TLM** |

## MEMORANDUM OF DECISION

**INTRODUCTION**

On June 15, 2017, Ernest Woodrow Barstad and Christine Ragan Barstad ("Barstads" or "Debtors") filed a chapter 13 petition commencing the above captioned bankruptcy case, Case No. 17-60586.[1]  On August 11, 2017, Glenn Davidson ("Davidson) and Tom Ide ("Ide) filed a complaint commencing adversary proceeding 17-00027-TLM and seeking declaratory relief in two regards: (1) that certain buy-sell agreements with Debtors were not "executory contracts" under the Bankruptcy Code, as was alleged in Debtors' initial chapter 13 plan, and (2) that Debtors' petition filed immediately after entry of a state court decision by the Montana Third Judicial District Court of Powell County ("Powell County District Court") enforcing those agreements was an abuse of bankruptcy law.  Debtors filed a counterclaim asserting the June 9, 2017 state court decision and order constituted a "transfer" avoidable by Debtors as a preference under § 547(b).

Several filings in the main case, and in the related adversary proceeding, are now ripe for decision.  In the main case, Davidson and Ide filed a Motion to Modify Stay, Doc. No. 112 ("Stay Motion"), and Debtors objected thereto.  That matter was heard on April 25, 2019, and taken under advisement.  In addition, Trustee filed a motion to dismiss the chapter 13 case, Doc. No. 128, as did Davidson and Ide, Doc. No. 131 (the "Dismissal Motions").  And Debtors filed objections to the proofs of claim of Davidson and Ide, Doc. Nos. 134, 135 (the "Claim Objections").  The Dismissal Motions and the

---

[1] Unless otherwise indicated, statutory citations in this Decision refer to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and "Rule" citations are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 2

Claim Objections were heard on May 22, 2019, and taken under advisement.  In the adversary proceeding, Debtors filed a motion for summary judgment on the preference issue, Adv. Doc. No. 18 ("Debtors' MSJ"), which was argued on April 25, 2019, and taken under advisement.[2]

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 157.  All matters at issue in the case and adversary proceeding are core proceedings.  28 U.S.C. § 157(b)(2)(A), (B), (F), (G) and (O).[3]  This Decision constitutes the Court's findings and conclusions pursuant to Rules 7052 and 9014.

## BACKGROUND AND FACTS[4]

Prior to bankruptcy, Debtors owned a 320-acre ranch property located at 3401 Dry Gulch Road, Ovando, Powell County, Montana (the "Property").  In April 2016, Debtors contracted with an auction company, Albert Burney, Inc. ("Auctioneer"), to sell the Property at an "absolute auction with no minimums or reserves . . . to the highest bidder(s) regardless of bid price."  The agreement specified that, upon sale, Debtors

---

[2] Under Mont. LBR 7056-1, motions for summary judgment are generally considered on the record without oral argument.  The Court allowed the parties to argue the same along with other matters on April 25.  *See* Notice and Order, Doc. No. 124.

[3] The complaint, Adv. Doc. No. 1 at ¶ 1–5, asserts this Court has such jurisdiction and that the matters are core, and the answer and counterclaim by Debtors, Adv. Doc. No. 12, admits those allegations.  While the complaint lacks the additional statement of the plaintiffs' consent to entry by this Court of final orders or judgment required by the amendments to Rule 7008 that became effective December 1, 2016, and the answer is similarly noncompliant with Rule 7012(b), amended effective the same date, the conduct of the parties throughout manifests their consent.  *Wellness Int'l. Network, Ltd. v. Sharif*, __ U.S. __, 135 S.Ct. 1932, 1944–48 (2015).

[4] These facts are established through the Court's record as well as by the decisions from the Montana Supreme Court and the Powell County District Court, which will be discussed later in this Decision.

MEMORANDUM OF DECISION - 3

would convey the Property by general warranty deed, free and clear of all encumbrances, including but not limited to a mortgage debt of $550,000 Debtors owed to Two Rivers Bank. The Property was to be sold as a whole or alternatively in two separate 160-acre parcels: Parcel #1 (the southern 160 acres, with some improvements) and Parcel #2 (the northern unimproved 160 acres).

The auction was held on June 30, 2016. Davidson was the successful bidder on Parcel #1 at $341,000, and Ide was the successful bidder on Parcel #2 at $154,000. Both had executed Real Estate Auction Terms and Conditions ("REATC") governing the auction sale process and subsequent real estate transactions. The REATC required bid deposits of $50,000 to bid on the entire Property, $30,000 to bid on Parcel #1 and $20,000 to bid on Parcel #2, such deposits to be "in certified funds, or other funds acceptable to the Seller and/or Auction Company[.]" The Auctioneer accepted Davidson's $50,000 personal check and his bank's letter verifying the availability of funds. The Auctioneer also accepted Ide's $50,000 cash bid deposit.

Following the auction, Debtors, Davidson and Ide executed "Agreements to Purchase Real Estate" on their respective parcels (the "Buy-Sell Agreements").[5] Earnest money equal to 10% of the sales price was required by the Buy-Sell Agreements. Davidson provided the Auctioneer with a check for $34,100 on the day of the auction, and it was forwarded to the title company the following day. Ide provided the Auctioneer

---

[5] *See, e.g.*, *Davidson v. Barstad*, 435 P.3d 640, 642 (Mont. 2019) (noting that following the execution of the agency agreement with the Auctioneer, the sellers acted through Woodrow Barstad personally and under Christine Barstad's power of attorney), and at 643 (noting the Buy-Sell Agreements were executed by the sellers through Woodrow Barstad).

MEMORANDUM OF DECISION - 4

with $15,400 in cash the day of the auction, which the Auctioneer converted into a cashiers' check and deposited with the title company.

The Buy-Sell Agreements each state that "Seller agrees to sell and convey [the Property] to Purchaser by General Warranty Deed . . . pursuant to" the terms in the Buy-Sell Agreement. Those terms included those in the incorporated and attached REATC. Each Buy-Sell Agreement states that the Seller "acknowledges and agrees" that the sale was pursuant to the auction contract and that the Seller "accepts Purchaser [Davidson and Ide respectively] was the successful bidder." The Buy-Sell Agreements also provide that, upon execution, "a valid and binding contract of sale shall exist under the [following] terms and conditions" and that, should Seller default, "Purchaser may reclaim the earnest money or . . . shall have only the right of specific performance." The Buy-Sell Agreements provided for an August 1, 2016 closing date.

On July 12, 2016, Debtors advised Davidson by letter that they would not perform their Buy-Sell Agreement with him because he had used a personal check for the earnest money. And Debtors sent a July 26 letter to Ide advising that they would not perform their Buy-Sell Agreement with him because his earnest money was provided to the title company the day after the auction and also because they challenged his pre-auction bid deposit. On July 12, 2016, Debtors also sent letters to both Davidson and Ide advising that Debtors intended to sell the water rights separately from the Property.

Davidson and Ide filed complaints in state court seeking specific performance of their Buy-Sell Agreements. Debtors answered and asserted counterclaims. Debtors moved for summary judgment, and Davidson and Ide filed cross-motions for summary

MEMORANDUM OF DECISION - 5

judgment.  The Powell County District Court denied Debtors' summary judgment motion and granted Davidson and Ide's motions, awarding them specific performance of their Buy-Sell Agreements.  Debtors filed their bankruptcy petition six days after the Powell County District Court entered its decision, and Davidson and Ide filed the adversary complaint shortly thereafter.

In addition to the adversary proceeding initiated by Davidson and Ide, Debtors filed their own complaint commencing Adv. Proc. 17-00030.  Through it, Debtors removed the Powell County District Court case addressing specific performance, and a second state court case in which Debtors were suing Davidson, Ide, the Auctioneer and a real estate company.  The Court, on December 21, 2017, determined that remand of the removed actions was warranted and appropriate.[6]

In the order remanding the state court litigation, this Court terminated the stay of § 362(a) in order for the state court to hear and resolve the parties' disputes and enter appropriate orders and judgments; required the parties to advise this Court of the entry of any such state court orders and/or judgments; stayed enforcement of the state court orders and judgments absent this Court's order; and abstained from hearing matters in Adv. Proc. 17-00027 until the state court had ruled.  *See* Adv. Proc. 17-00030 at Adv. Doc. Nos. 165, 166.[7]

---

[6] *See Barstad v. Davidson, et al. (In re Barstad)*, 580 B.R. 272 (Bankr. D. Mont. 2017).

[7] The decision states that "[f]or clarity, the stay will be lifted to allow the state court to proceed to resolve the parties' disputes.  However, once the state court has resolved matters, enforcement or application of the resulting rulings or judgments *for bankruptcy purposes* will require the parties to return to this Court."  *Id.* at 283.

MEMORANDUM OF DECISION - 6

On January 10, 2018, Davidson and Ide advised the Court of a January 8, 2018 post-remand entry of the Powell County District Court's decrees for specific performance.  *Id.* at Adv. Doc. Nos. 169-2 and 169-3.[8]  Those decrees ordered Debtors to "convey by warranty deed [the respective Parcels to Davidson and Ide] free and clear of all encumbrances, together with all appurtenances, including the water rights appurtenant to the property under the terms set forth in the contract between the Barstads and [Davidson and Ide] dated June 30, 2016[.]"  *Id.*

On February 26, 2019, the Montana Supreme Court affirmed the Powell County District Court decision.[9]  In doing so, it rejected Debtors' arguments that the pre-auction bid deposits and post-auction earnest money deposits of Davidson and Ide were nonconforming under the terms of the REATC.  435 P.3d at 646–48.  It held:

> [T]he form of Davidson's pre-auction bid deposit, and his derivative post-auction earnest money deposit, neither effected a failure of a condition precedent to formation of his buy-sell agreement with [Debtors], nor failure of a condition precedent to their performance thereunder.  We hold that the District Court did not erroneously grant summary judgment specifically enforcing the Davidson buy-sell agreement against Sellers.

*Id.* at 647–48.  It further held:

> [T]he form of Ide's pre-auction bid deposit, and derivative post-auction earnest money deposit, neither effected a failure of a condition precedent to formation of his buy-sell agreement with Sellers, nor a failure of a condition precedent to their performance thereunder.  We hold that the District Court did not erroneously grant summary judgment specifically enforcing the Ide buy-sell agreement with Sellers.

---

[8]  *See also* Stay Motion at Doc. No. 112-3 (decrees for specific performance).

[9]  The Montana Supreme Court's decision is reported as *Davidson v. Barstad*, 435 P.3d 640 (Mont. 2019).

MEMORANDUM OF DECISION - 7

*Id.* at 648.

## DISCUSSION AND DISPOSITION

### A.     The Buy-Sell Agreements

Debtors assert the Buy-Sell Agreements are executory contracts subject to § 365 of the Code and, as such, Debtors may reject them.  Their amended plan, like their two preceding chapter 13 plans, proposes to do so. [10]  Doc. No. 126 at 3 ("Amended Plan"). Davidson and Ide dispute these contentions, and their Stay Motion seeks termination of the § 362(a) stay in order to enforce their specific performance decrees which were based on the Buy-Sell Agreements.

### 1.     Davidson and Ide are entitled to specific performance

Under Mont. Code. Ann. § 27-1-411(2), specific performance is an equitable remedy that is applicable when pecuniary compensation for a defendant's failure to perform pursuant to the terms of a contract fails to afford adequate relief.  The Montana statute also provides that specific performance may be compelled where, as here, "it has been expressly agreed in writing, between the parties to the contract, that specific performance thereof may be required by either party or that damages shall not be considered adequate relief."  Mont. Code Ann. § 27-1-411(4).  *See also Hanson v. Hayes (In re Hayes)*, 2010 WL 2025516, *6–8 (Bankr. D. Mont. May 19, 2010) (recognizing

---

[10]  Debtors' initial chapter 13 plan was filed in July 2017, Doc. No. 21, and it was denied confirmation in October 2017, without prejudice to the filing of an amended plan.  Doc. No. 65.  An amended plan, Doc. No. 87, was filed on March 7, 2018, shortly after the specific performance decrees were entered.  Confirmation on that amended plan was ultimately set for March 15, 2019, and denied at that hearing.  *See* Doc. No. 121.

MEMORANDUM OF DECISION - 8

operation of § 27-1-411(4)).  And, under Mont. Code Ann. § 27-1-419, a court presumes that a breach of a contract involving the sale of land cannot be relieved adequately by pecuniary compensation.  *See Boyne USA, Inc. v. Spanish Peaks Devel., LLC*, 292 P.3d 432, 444 (Mont. 2013); *see also McDonald v. Cosman*, 6 P.3d 956, 958 (Mont. 2000) ("Contracts for the sale of real property are specifically enforceable because '[i]t is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation.' Section 27-1-419, MCA"); *Double AA Corp. v. Newland & Co.*, 905 P.2d 138, 141 (Mont. 1995).

The decision of the Montana Supreme Court clearly and unambiguously held that the Powell County District Court correctly determined Davidson and Ide were entitled to specific performance of their respective Buy-Sell Agreements.  The RETAC incorporated into the Buy-Sell Agreements expressly provided for that remedy and result, and the Montana statutory provisions apply.

The Montana Supreme Court's ruling on this aspect of the dispute is preclusive and cannot be relitigated.  *Mont. Dep't. of Labor & Indus. v. Neff (In re Neff)*, 2013 WL 6713071 (Bankr. D. Mont. Dec. 19, 2013), holds that, under the Full Faith and Credit Act, the court will apply the preclusion law of the state in which the judgment originates. In Montana, the test for preclusion is (1) was the issue decided in the prior adjudication identical to the one presented in the action in question; (2) was there a final decision on the merits; and (3) was the party against whom collateral estoppel is asserted a party or in

privity to a party to the prior adjudication. *Id.* at *7 (citing *In re Houston*, 2008 WL 5971043 (Bankr. D. Mont. 2008)).[11]

As discussed further below, it is significant that the operative underlying decision granting specific performance was entered by the Powell County District Court on June 9, 2017, *prior* to Debtors filing their chapter 13 petition.  After this Court ordered that the state court process could continue to conclusion, the post-bankruptcy affirmance by the Montana Supreme Court validated that prebankruptcy decision.

## 2.     The Buy-Sell Agreements do not constitute executory contracts

As noted, Debtors' Amended Plan characterizes the Buy-Sell Agreements executed on June 30, 2016, as executory contracts and proposes to reject the same.  Doc. No. 126 at 3.  The Court finds and concludes that this characterization is incorrect.[12]

---

[11]  *See also Hunt v. Bailey (In re Bailey)*, 2013 WL 1342726, *3 (Bankr. D. Mont. Apr. 2, 2013) (noting that "issue preclusion provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'") (quoting *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008)).  *Bailey* also recognized that rules of comity require federal courts to give prior state court judgments the same preclusive effect as the courts of that state would.  *Id.  See also Atigeo LLC v. Samson (In re Blixseth)*, 2011 WL 61197, *3 (Bankr. D. Mont. Jan. 4, 2011) ("[F]ederal courts must give a state court judgment the same preclusive effect to which the judgment would be entitled in the courts of the state in which it was entered.") (citing *Allen v. McCurry*, 449 U.S. 90, 94–96 (1980); *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993)).

[12]  In oral argument, Debtors pointed out that, while they sought summary judgment in Adv. Proc. No. 17-00027 on the preference contention (addressed further below), Davidson and Ide did not seek summary judgment on their declaratory judgment action seeking a ruling that the Buy-Sell Agreements were not executory contracts.  To the extent this is meant to suggest the Court cannot at this time address the executory contract contention, the Court finds the argument unpersuasive.  From the outset of the bankruptcy, and in each of three seriatim plans, Debtors have urged the § 365 contention.  They have briefed and argued it.  It is integral not just to their plans but also to the pending Dismissal Motions and the Stay Motion.  The relevant facts are established by the record and by the decisions of the Powell County District Court and the Montana Supreme Court.  The issue is properly before the Court.

Cases such as *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885 (9th Cir. 1982); *In re Hertz*, 536 B.R. 434 (Bankr. C.D. Cal. 2015); and *Zeiler v. Matt (In re Matt)*, 2013 WL 2250300 (Bankr. D. Mont. May 22, 2013), address the applicability of § 365(a) rejection to a real estate purchase contract. *Hertz* recognized that, within the Ninth Circuit, the "Countryman" definition[13] is generally applied to determine whether a contract is executory for purposes of § 365. *Hertz*, 536 B.R. at 439 (citing *Pac. Express, Inc. v. Teknekron Infoswitch Corp. (In re Pac. Express)*, 780 F.2d 1482, 1487 (9th Cir. 1986)).

The case law makes it clear that within the Ninth Circuit, the distinction between performance and tender of performance can be critical in determining whether a real estate contract is executory and capable of being rejected. However, here, the Court is presented with more than unfulfilled Buy-Sell Agreements. In this case, there is a pre-petition decision and order by the Powell County District Court that specific performance would be compelled. And, thus, this situation falls outside the *Hertz*, *Matt*, and *Alexander* analysis. Indeed, in cases in which specific performance had been ordered prior to bankruptcy, courts have concluded there is no executory contract.

For example, in *In re Smith*, 269 B.R. 629 (Bankr. E.D. Tex. 2001), purchasers of real estate sought relief from the § 362(a) stay in order to enforce a pre-petition judicial

---

[13] That definition provides a contract is executory if the obligations of both parties to the contract "are so far underperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy: Part 1, 57 Minn. L. Rev. 439, 460 (1973). *See Alexander*, 670 F.2d at 887 (9th Cir. 1982) (citing Countryman test).

MEMORANDUM OF DECISION - 11

decree mandating the specific performance of a land sale contract by debtors, and "to preclude any rejection of that contract" by debtors. *Id.* at 630. The transaction was documented with an earnest money contract executed by the debtors and buyers. It was scheduled for closing but, prior to that time, the debtors informed the listing broker that they were unwilling to consummate the sale. The buyers appeared at closing with certified funds to complete the purchase as per the contract, but debtor failed to appear. The purchasers thereafter brought a lawsuit, and the state court entered an order of specific performance requiring the debtors to convey the property. The debtors thereafter filed a chapter 13 petition. Prior to any plan confirmation hearing, the purchasers brought motions to forbid rejection of the contract and to obtain stay relief in order to enforce the state court order. The debtors objected to both motions contending the earnest money contract was an executory contract which could be properly rejected under § 365 and § 1322(b)(7). *Id.* at 630.

In addressing the dispute, the court in *Smith* noted the applicability of the Countryman definition for executory contracts. It then stated:

> The parties in this case signed an earnest money contract requiring further performance by each party. Thus, upon its execution, the contract was clearly executory under the Countryman definition. However, the question arises as to the effect of the April 4, 2001, decree of specific performance issued by the Polk County District Court against the Debtors. Debtors argue that, because they have yet to convey actual title to the Purchasers, and the Purchasers have yet to actually pay the purchase price, performance remains due by each party and the contract can therefore be properly characterized as executory and thus rejected. The Purchasers reject that proposition, claiming that the Debtors cannot legitimately reject the contract because, under the business judgment test, Debtors' unsecured creditors will not benefit from the decision to reject this contract. However, both parties ignore the prerequisite to the application of 11 U.S.C. §§ 365 or

1322(b)(7): the contract must be executory before it can be rejected. *Relevant jurisprudence reveals that the existence of a pre-petition decree for specific performance of the earnest money contract is the determinative factor in any analysis of the executory nature of this contract.*

*Id.* at 631 (emphasis added).

That court proceeded to distinguish both *Alexander* and *TKO Properties, LLC v. Young (In re Young)*, 214 B.R. 905 (Bankr. D. Idaho 1997), both of which are relied upon by Debtors in the present litigation. *Smith* states, apropos to the instant action:

The Debtors' reliance upon these two cases, however, is misplaced. Neither case involved a pre-petition decree of specific performance against the debtor-seller. This is the crucial fact in the present case because the pre-petition decree of specific performance transforms the Debtors' obligations under the contract. After the Polk County District Court entered its specific performance decree, the rights and obligations of both parties to the earnest money contract became defined and governed by the specific performance decree. . . . Because the state district court could not have entered a specific performance decree under Texas law without inherently finding that the Purchasers had either completed their contractual obligations, . . . or were precluded from such completion due to the acts or omissions of the Debtors, . . . any remaining obligations under the earnest money contract at issue were, of necessity, transformed by the entry of the specific performance decree into merely ministerial acts, the performance of which can be compelled by the state district court either under Rule 308 of the Texas Rules of Civil Procedure or under its inherent authority to enforce its own decrees.

269 B.R. at 632. *Smith* continues:

Accordingly, any attempt by the Debtors to characterize this sales contract as an executory contract has been precluded by the entry of the specific performance decree. *See, e.g., Winter v. Glaze (In re Glaze)*, 169 B.R. 956, 960 (Bankr. D. Ariz. 1994) ["This Court's review of the cases on the issue of what constitutes an executory contract reflects that the entry of a judgment is a critical point; thus, the contract for the sale of debtor's home is not an executory contract because of the pre-petition entry of a judgment of specific performance."]; *Roxse Homes, Inc. v. Roxse Homes Ltd. Partnership*, 83 B.R. 185, 187 (D. Mass. 1988), *aff'd* 860 F.2d 1072 (1st Cir. 1988) [stating that "(o)nce a judgment for specific performance is entered, the parties' remaining unperformed obligations become non-material, or

'ministerial' acts through which the parties merely carry out the court's directive . . ." and further acknowledging that "[c]ourts agree that the phrase 'executory contract' cannot be applied to a judicial order."]; *In re High Country Resorts*, 94 B.R. 193, 194 (Bankr. D.N.M. 1988) ["After a judgment has been rendered on a contract it is no longer executory."]

*Id.* at 632–33.[14]  The court in *Smith* concluded that, "in compelling the Debtors to honor their respective contractual commitments through entry of the specific performance decree, the state district court inherently rejected the existence of any impediment which might have relieved the Debtors from their obligations under the contract." *Id.* at 633.

Here, the Powell County District Court decision had not been reduced to judgment prior to Debtors' filing, but the Court concludes this distinction does not make a difference.  As found in *In re Ter Bush*, "A contract for the purchase and sale of real property is no longer executory once that contract has been reduced to a judgment in a specific performance action. . . .  Although Debtor's bankruptcy filing prevented [purchaser] from getting a final judgment because of the automatic stay going into effect, that technicality does not cause the Agreement to remain executory." 273 B.R. 625, 628 (Bankr. S.D. Cal. 2002) (citing *Glaze* and *Roxse Homes*).

Therefore, this Court concludes, in light of the foregoing case law, that the Powell County District Court decision, entered six days before Debtors filed their chapter 13

---

[14] *Glaze* relied on *Roxse Homes* and other cases and distinguished *Alexander*, stating that "[i]n *Alexander*, no prepetition judgment of specific performance had been entered by the court.  This Court's review of the cases on the issue of what constitutes an executory contract reflects that the entry of a judgment is a critical point."  169 B.R. at 960.  Additional cases support the proposition that the entry of a prebankruptcy order or decree of specific performance eliminates the ability to characterize the underlying contract as executory.  *See In re Acevedo*, 441 B.R. 428, 434 (Bankr. S.D.N.Y. 2010) ("Where the remedy granted pursuant to a pre-petition court order is specific performance, the contract is deemed to have been executed by virtue of the court decision and therefore not subject to § 365.") (citing *Roxse Homes*); *In re Ter Bush*, 273 B.R. 625, 628 (Bankr. S.D. Cal. 2002).

MEMORANDUM OF DECISION - 14

petition, and now validated and affirmed by the decision of the Montana Supreme Court, had the effect of rendering the Davidson Buy-Sell Agreement and Ide Buy-Sell Agreement non-executory, and that this eliminates Debtors' ability to reject the same under § 365 and § 1322(b)(7).

**B.    Application of the foregoing to pending motions**

**1.    Debtors' Amended Plan and the objections thereto**

As noted, Debtors' Amended Plan is premised upon the ability to reject the Buy-Sell Agreements as executory contracts under § 365 and § 1322(b)(7). Debtors, Trustee, and Davidson and Ide have all addressed this legal issue at length. Even though confirmation is not presently ripe for decision, Debtors' proposed approach cannot be sustained.

Debtors argue that, if the Court rejects the executory contract argument, they are entitled to a ruling on their alternative contention that the Powell County District Court's decision constituted a preferential transfer. That issue is discussed below. They also contend they could propose a "surrender" of the Property in an amended plan as an alternative to § 365(b) treatment, though it was not explained how surrender would comply with the decrees' commands (*e.g.*, conveyance free and clear of encumbrances). Since confirmation of the Amended Plan is not before the Court, and there is no amendment proposing surrender or other treatment, the Court will not address these matters further. It will, however, address Debtors' MSJ, the Dismissal Motions, and the Stay Motions, all of which relate in material ways to the foregoing conclusions.

MEMORANDUM OF DECISION - 15

## 2.   Debtors' MSJ in Adv. Proc. 17-00027

Summary judgment requires the proponent to establish there is no genuine dispute as to any material fact and the proponent is entitled to judgment as a matter of law. *See* Rule 7056 (incorporating Fed. R. Civ. P. 56).  The standards guiding this Court in evaluating such motions are well established. *Richardson v. Wolf Auto Ctr. (In re Richardson)*, 2018 WL 2338357, *1–2 (Bankr. D. Mont. May 23, 2018).

As noted, Debtors' MSJ on their counter-claim in adversary proceeding 17-00027 asserts that the Powell County District Court decision constitutes a preference under § 547(b) that Debtors can avoid.[15]  They argue that the state court's summary judgment decision and order was a "transfer," made on account of antecedent debts owed by Debtors, while Debtors were insolvent, to or to the benefit of Davidson and Ide as creditors, and made within 90 days of the bankruptcy filing, and which transfer allows Davidson and Ide to receive more than they would in a chapter 7 liquidation. *See* § 547(b)(1)–(5).[16]

---

[15]  There is a threshold issue regarding Debtors' avoidance action.  Courts are divided over whether chapter 13 debtors can exercise the power of avoidance under § 547(b), a provision that expressly states "the trustee may avoid" such transfers.  *See* 5 Collier on Bankruptcy, ¶ 547.11[2][e] (Richard Levin & Henry J. Sommer, eds., 16th ed.).  In *Houston v. Eiler (In re Cohen)*, 305 B.R. 886, 892–900 (9th Cir. BAP 2004), the Panel determined chapter 13 debtors have statutory standing and third-party non-statutory standing.  *See also Hernandez v. Wells Fargo Bank, N.A. (In re Hernandez)*, 2015 WL 6736698, *4 (9th Cir. BAP Nov. 3, 2015) (following *Cohen*).  However, in *Shawhan v. Shawhan (In re Shawhan)*, 2008 WL 8462964 (9th Cir. BAP July 7, 2008), the Panel determined that the *Cohen* "concept" should not be extended to the facts in that case.  *Id.* at *9, n.19.  Many courts outside the Circuit disagree with *Cohen*.  *See, e.g.*, *Hansen v. Green Tree Servicing, LLC (In re Hansen)*, 332 B.R. 8 (10th Cir. BAP 2005).  The Court need not resolve this issue given its substantive analysis of Debtors' MSJ.

[16]  *See* Adv. Doc. No. 12 at 3 (amended answer and counterclaim), and Adv. Doc. No. 16 at 2 (brief), asserting the Powell County State Court's summary judgment order was a transfer avoidable by Debtors under § 547(b).

While the Court discerns several problematic issues in Debtors' MSJ and supporting submissions, a few are outcome determinative.

### a.    "Creditor" and "claim"

Debtors argue that Davidson and Ide are "creditors" and that a "claim" exists for each under § 101(5)(B) because they had a "right to payment" because the Buy-Sell Agreements allowed them to seek repayment of their earnest money or specific performance.  *See*, *e.g.*, Adv. Doc. No. 16 at 5–6.

Section 101(5) provides:

(5)  The term "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Under this definition, the right to an equitable remedy for breach of performance is a "claim" *only* if the underlying breach gives rise to a right to payment.  "Thus, where a creditor receives a judgment entitling him to specific performance of a land sale contract, that person will have a 'claim' if the specific performance decree may be satisfied by an alternative award of monetary damages."  *Acevedo*, 441 B.R. at 435.  *See also Ter Bush*, 273 B.R. at 628–29 (same, citing *Roxse Homes*, and noting that under California statute it is presumed that a breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation).  As previously noted, Mont. Code Ann. § 27-1-419

creates a presumption "that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation[.]"  In addition to the statutory presumption, the Buy-Sell Agreements here provide that "If Seller defaults in the performance of this agreement, Purchaser may reclaim the earnest money deposit *or the Purchaser shall have only the right of specific performance*."  Adv. Proc. No. 17-00027 at Doc. Nos. 1-3 at 2 and 1-4 at 2 (emphasis added).[17]  *Glacier Campground v. Wild Rivers*, 597 P.2d 689 (Mont. 1978), states: "'Where a contract specifically provides that the remedies enumerated therein shall be the only course of settlement thereunder, a party to it is limited to the remedies provided therein.'"  *Id.* at 696–97 (quoting *Wing v. Brasher*, 194 P. 1106 (Mont. 1921)).  Here, Davidson and Ide elected to pursue specific performance in state court.

The comments of the court in *Acevedo* are also instructive.  That court stated:

> Although not raised by any of the parties, it is likely that the State Court Orders directing specific performance would not be voidable as a preference under 11 U.S.C. § 547.  To constitute a preference, a transfer within 90 days of the filing must be to or for the benefit of a creditor.  11 U.S.C. § 547(b)(i).  Although the Supreme Court Order became final by the Appellate Division Order within 90 days of the filing, it would appear that the Purchaser would not be found to be a creditor under 11 U.S.C. § 101(10).  That section defines a creditor as an entity that has a claim against the debtor or the estate.  As stated previously, the equitable relief of specific performance in this matter did not constitute a claim, therefore the Purchaser would not be found to be a creditor.  Further, it seems that the State Court Orders did [not] constitute a transfer of an interest to the Purchaser.  Therefore, without ruling on the issue of a preferential transfer, it appears to the Court that the State Court Orders, although having become final within 90 days of the filing of the

---

[17]  The two June 30, 2016 Buy-Sell Agreements were attached to Davidson and Ide's complaint and alleged to be true and correct copies, and this default language was expressly recited.  Adv. Doc. No. 1 at 2, ¶¶ 8–11.  Debtors' answer, Adv. Doc. No. 12 at 1, admits ¶¶ 8–11 of the complaint.

petition, did not result in a transfer to or for the benefit of a creditor under section 547(b)(i).

441 B.R. at 436 n.19.

Based on the foregoing, the Court concludes that Davidson's and Ide's rights are established by the, now affirmed, Powell County District Court decision. Specific performance is an equitable remedy, it was provided for by the Buy-Sell Agreements, and it was ordered by the state court prior to bankruptcy. This equitable remedy is not a "claim" under § 101(5)(B). Consequently, Davidson and Ide are not "creditors" as defined under § 101(10)(A), and this raises a barrier to relief under § 547(b)(1).

### b.    "Transfer"

Debtors contend that the subject "transfer" was the entry of the Powell County District Court summary judgment decision and order. Adv. Doc. No. 16 at 4 (arguing that "transfer" is defined in § 101(54)(D) as a "mode . . . of disposing of or parting with property or an interest in property" and that "[i]n this case, the mode of disposition was a state court summary judgment order commanding the Barstads to transfer two parcel of real estate in satisfaction of purchase funds tendered to them by Creditor Glenn Davidson and Creditor Tom Ide.").

What constitutes a transfer and when it is complete is a question of federal law. [18] In the absence of any controlling federal law, "property" and "an interest in property" are creatures of state law.[19] Though the phrase in § 547(b) "any transfer of an interest of the

---

[18] *Havre Aerie #166 Eagles v. Groven (In re Havre Aerie #166 Eagles)*, 2013 WL 1084500, *5 (Bankr. D. Mont. Mar. 14, 2013) (citing *Barnhill v. Johnson*, 502 U.S. 393, 397 (1992)).

[19] *Id.* (citing *Barnhill*, 502 U.S. at 398).

MEMORANDUM OF DECISION - 19

debtor in property" is broadly interpreted, the Court concludes the term is not applicable to the Powell County District Court decision here.  Certainly, Debtors agreed to make a "transfer" of their interest in property when they executed the Buy-Sell Agreements on June 30, 2016.[20]  However, Debtors did not consummate those transfers; they instead refused to proceed to closing.[21]  On June 9, 2017, the state court granted summary judgment to Davidson and Ide for specific performance.  But by its nature, such a judicial decision does not itself effect a transfer of the realty.  Rather, it compels the recalcitrant party (or another party[22]) to transfer the property consistent with the underlying contractual obligation.

---

[20]  Of course, if the June 30, 2016 Buy-Sell Agreements were themselves deemed a "transfer of an interest of the debtor in property," the filing of the petition on June 15, 2017, would require, for preference purposes, that the transferees were "insiders."  *See* § 547(b)(4)(B).

[21]  *Havre Aerie #166* states:

> While the Bankruptcy Code does not define "an interest of the debtor in property," the Supreme Court has interpreted the term to mean "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings."  *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990)

2013 WL 1084500 at *5.  Debtors' assertion that the Property was transferred by the Powell County District Court decision creates an inconsistency.  Here, Debtors previously asserted the Property *was* property of their estate, *see* Doc. No. 16 at 3, and their SOFA denied that any "transfers" were made, *id.* at 35–36.

[22]  Mont. R. Civ. Proc. 70, provides, in part:

> **a. Party's Failure to Act; Ordering Another to Act.**  If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court.  When done, the act has the same effect as if done by the party.

> **b. Vesting Title.**  If the real or personal property is within the state, the court—instead of ordering a conveyance—may enter a judgment divesting any party's title and vesting it in others.  That judgment has the effect of a legally-executed conveyance. (Continued)

MEMORANDUM OF DECISION - 20

The Powell County District Court decision reflects an order of compulsion.  It commands Debtors to perform.  They did not do so before filing for bankruptcy relief, and they still have not done so.  The state court decision and order is not a "transfer" but, rather, an order compelling a transfer, which transfer will occur when Debtors (or court-appointed persons under the Montana rules) comply and close the sales under the Buy-Sell Agreements.

### c.   Conclusion

The Court concludes that Davidson and Ide do not have "claims" and, thus, are not "creditors," and that the Powell County District Court decision is not itself a "transfer." Debtors have failed to carry their burden under § 547(g) to show all the requirements of § 547(b) are met.  Debtors' MSJ will therefore be denied.

### 3.   The Dismissal Motions

Dismissal of a chapter 13 case may be ordered under § 1307(c) "for cause, including" those grounds itemized in § 1307(c)(1) through (c)(11).[23]  Trustee's motion to dismiss is brought under § 1307(c) and argues Debtors' Amended Plan "is inconsistent with the relief required by the order entered by the Montana Supreme Court."  Doc. No. 128 at 1.  Davidson and Ide's motion is similarly premised, and they argue Debtors'

---

. . .

**e.  Holding in Contempt.**  The court may also hold the disobedient party in contempt.

[23] Under § 102(3), the term "including" used in § 1307(c) is not limiting.

MEMORANDUM OF DECISION - 21

approach supports dismissal for "cause" including a lack of good faith.  Doc. No. 132 at

10–13.

> Although not specifically listed, bad faith is a "cause" for dismissal under
> § 1307(c).  *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994).  In
> this Circuit, bankruptcy courts make good faith determinations on a case-by-
> case basis, after considering the totality of the circumstances.  . . .  In
> addition, a "'court must make its good faith determination in the light of all
> militating factors.'"  *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (9th Cir.
> BAP 2002) (citing *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir.
> 1982)).

*McCarthy v. Martin (In re Martin)*, 2016 WL 7188655 at *10 (9th Cir. BAP Dec. 6,

2016) (citing *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999)).  *See*

*also Khan v. Barton (In re Khan)*, 846 F.3d 1058, 1065–66 (9th Cir. 2017).  The factors

outlined in *Leavitt* are:

> (1) whether the debtor misrepresented facts in his petition or plan, unfairly
> manipulated the Bankruptcy Code, or otherwise filed his Chapter 13 petition
> or plan in an inequitable manner;
>
> (2) the debtor's history of filings and dismissals;
>
> (3) whether the debtor only intended to defeat state court litigation; and
>
> (4) whether egregious behavior is present.

*Leavitt*, 171 F.3d at 1224 (citations omitted).  The four factors are not all-inclusive, and a

court need not find every factor to be proven in order to conclude bad faith has been

shown.  *Khan*, 846 F.3d at 1066.

Debtors do not have a history of filing and dismissing bankruptcy cases.  Thus the

second factor is not at issue.  Instead, the parties' arguments for dismissal focus in

varying ways on Debtors' approach to the Montana courts' rulings and their proposed

plan treatment of the Buy-Sell Agreements.  The Dismissal Motions emphasize the third

MEMORANDUM OF DECISION - 22

factor—"whether the debtor only intended to defeat state court litigation"—based on the

timing of Debtors' filing mere days after the Powell County District Court decision

requiring specific performance was entered after a year of litigation.

> *Khan* discussed this third factor:

>> The Debtors attack [the bankruptcy court's] determinations and concentrate a good deal of their firepower on *Leavitt*'s third factor. *Leavitt*, 171 F.3d at 1224; *see also Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1445 (9th Cir. 1986). They focus on the word "only" and take that to mean that defeating state court litigation had to be the sole motive, but we have not so treated it. For example, in *Leavitt* itself we decided that avoidance was merely the "primary" motive. *Leavitt*, 171 F.3d at 1225; *see also Eisen*, 14 F.3d at 470 (if only intent is to defeat state court litigation, that *is* bad faith); *Chinichian*, 784 F.2d at 1445 (multitude of factors showed bad faith, including the real purpose of the filing). The Debtors do not appear to recognize that the factors are simply factors to consider and that not every one of them must be met. That rather blinds them to the overarching requirement that what matters is "the 'totality of the circumstances.'" *Eisen*, 14 F.3d at 470; *see also Ho v. Dowell (In re Ho)*, 274 B.R. 867, 877 (B.A.P. 9th Cir. 2002) (a court must decide "'in the light of *all* militating factors'"). The BAP recognized that. *See Khan I*, 523 B.R. at 185.[24] As the BAP put it: "Even if a debtor presents more than one purpose for filing, the third *Leavitt* factor does not fail to support cause if the other purpose also reflects bad faith. And, once again, the third factor is considered in the totality of the circumstances context." *Id.* at 186.

*Id.* at 1066.

In *Mead v. Loheit (In re Mead)*, 2010 WL 6259982 (9th Cir. BAP June 15, 2010), the bankruptcy court found that the debtor engaged in lengthy state court litigation with his former spouse and, "[w]hen he exhausted his state court options, Mead filed a chapter 13 bankruptcy petition and plan, listing [the spouse] as his only unsecured creditor and proposing to pay her a 4% dividend on her claim." *Id.* at *1. The Panel addressed the

---

[24] *Khan v. Barton (In re Khan)*, 523 B.R. 175 (9th Cir. BAP 2014).

MEMORANDUM OF DECISION - 23

Ninth Circuit authority regarding the good faith standards under §§ 1325(a)(3) and (a)(7). *Id.* at *5–7.[25]  It noted that, under *Chinichian*, 784 F.2d at 1444, the good faith inquiry "should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13."  *Id.*  On these premises, and considering the totality of the circumstances, the Panel held:

> The entirety of the record establishes that the only effect of Mead's proposed plan was to improperly deprive [the spouse] of the rights conferred upon her under state law.  Mead vigorously challenged [her] rights in state court for several years, but when these challenges failed, he filed bankruptcy seeking to accomplish in bankruptcy court what he could not in state court. . . .
>
> . . .
>
> . . . Borrowing from *Chinichian*, if one considers the debtor's intent (as can be inferred from his conduct), and the legal effect of his proposed plan, the bankruptcy court could not reasonably have concluded that either Mead's intent or his proposed plan were consistent with the spirit and purpose of chapter 13.

*Id.* at *6–7.[26]  The Panel in *Mead* thus affirmed the bankruptcy court.[27]

---

[25]  The Panel expressly recognized that the good faith issue in *Leavitt* arose in the context of dismissal of a chapter 13 case while in *Mead* it was confirmation and the good faith provisions for plan confirmation under § 1325, but it observed that "the Ninth Circuit considers the meaning of good faith to be analogous in both contexts."  *Id.* at *6 (citing *Eisen*, 14 F.3d at 470).

[26]  In *Chinichian*, the bankruptcy court had "concluded that the real purpose of the plan was to defeat state court litigation and that such purpose violated the 'spirit of the chapter'[.]"  784 F.2d at 1445.  The Court of Appeals found that the record revealed, as the bankruptcy court found, the filing of the chapter 13 was for the purpose of defeating a specific performance action and that factors indicating lack of good faith included the "strategic timing of the Chinichians' bankruptcy petitions, which effectively frustrated enforcement of the contract in state court and the Chinichians' change of their bankruptcy petition to Chapter 13 when their motion to reject the contract was denied in the Chapter 11 proceeding."  *Id.*; *see also In re Safakish*, 2018 WL 5621783 (Bankr. N.D. Cal. Oct. 29, 2018) (dismissing for lack of good faith a chapter 13 bankruptcy case that was filed in order to reject a settlement agreement).

[27]  That bankruptcy court had stated: "In considering the totality of the circumstances, which includes that the debtor's sole purpose for filing his chapter 13 case and the Plan is to circumvent and avoid the obligations imposed by the Dissolution Orders, the court concludes that the debtor has not demonstrated that the case, or the Plan, were filed in good faith."  *Id.* at *7.

In light of this Circuit authority, the Court in *In re Bennett*, 2017 WL 2198951 (Bank. D. Mont. May 18, 2017), concluded that a debtor's petition was filed "with the intent to defeat . . . state court contempt proceedings.  Avoidance of state court litigation merely needs to be the 'primary' motive.  *Khan*, 846 F.3d at 1066, citing *Leavitt*, 171 F.3d at 1225).  Avoiding . . . state court contempt proceedings clearly was Bennett's primary motive in filing his Chapter 13 petition."  2017 WL 2198951 at *6.

Here, the Powell County District Court decision and order was issued after almost a year of litigation stemming from Debtors' refusal to perform and close the Buy-Sell Agreements.  About a week later, the chapter 13 petition was filed.  The initial plan, filed a few weeks later, proposed to reject the Buy-Sell Agreements and sell the Property.  The conclusion that the intent was to avoid the enforcement of the Powell County District Court decision is clear.  In *Mead*'s characterization, *supra*, Debtors "filed bankruptcy seeking to accomplish in bankruptcy court what [they] could not in state court."  2010 WL 6259982 at *6.[28]

Litigation is often a springboard to bankruptcy, and the mere existence of adversely resolved prebankruptcy litigation is not ipso facto evidence of a lack of good

---

[28] The nature of the serial plans and Debtors' approach was explained by them. "The whole point of the instant plan of reorganization is to sell this property to get at the equity and pay all of the Barstads' debts."  Doc. No. 95 at 2 (Debtors' response to a stay relief motion, Nov. 27, 2018).  By that time, the Court had already denied Debtors' attempt to sell the Property under § 363.  *In re Barstad*, 2017 WL 6033414 (Bankr. D. Mont. Dec. 1, 2017).  They also explained: "The Barstads have always sought one of two possible outcomes for the property, and for either one to succeed, the real property must remain in the Barstads' estate.  First, the Court can confirm the Amended Plan rejecting the Buy-Sell contracts so that the Barstads can sell the ranch.  Second, if the Court does not confirm the plan, then it should find that the property can be recovered by the Barstads as a preferential transfer."  Doc. No. 143 at 2–3 (Debtors' brief in opposition to Davidson/Ide stay relief motion).

MEMORANDUM OF DECISION - 25

faith. The caselaw requires evaluation of the totality of the circumstances. Here, Debtors' assets and liabilities, income and expenses, number and nature of creditors, proposed plans, and the factual circumstances underlying the claims of Davidson and Ide as found by the prebankruptcy Powell County District Court decision, support the finding that Debtors' petition was filed and Debtors' Amended Plan proposed with the "primary motive" and purpose to defeat this state court litigation. *Bennett*, *supra*.

The Court finds and concludes that dismissal of this case is appropriate and warranted under § 1307(c).[29]

### 4.    The Stay Motion

Davidson and Ide have sought stay relief under § 362(d)(1) and § 362(d)(2) in order to enforce their decrees of specific performance. Dismissal of the case terminates the automatic stay of § 362(a). *See* § 362(c)(1) ("the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate"); § 362(c)(2)(B) ("the stay of any other act under subsection (a) of this section continues until the earliest of . . . (B) the time the case is dismissed"). The Stay Motion is thus rendered moot.[30]

### 5.    Debtors' Claim Objections

Davidson and Ide filed proofs of claim, though they explained that this was done as a matter of excess caution in the event Debtors were successful in their executory

---

[29] In reaching its conclusion, the Court considered whether conversion, rather than dismissal, is in the best interests of creditors and the estate. *See* § 1307(c).

[30] If not mooted by dismissal, the Court would grant the Stay Motion for cause under § 362(d)(1) given this Court's analysis and resolution of the prior motions.

MEMORANDUM OF DECISION - 26

contract arguments and obtained a ruling allowing rejection. Dismissal of the case eliminates the need to address the allowance or disallowance of claims. The Objections are thus also rendered moot.

**CONCLUSION**

Based on the foregoing, the Court finds, concludes, and will order (1) the Dismissal Motions of Davidson and Ide, and Trustee, will be GRANTED and this case will be DISMISSED; (2) Debtors' Motion for Summary Judgment in Adv. Proc. No. 17-00027 will be DENIED; (3) Davidson and Ide's Stay Motion, and Debtors' Claim Objections, are rendered moot by dismissal of the case and, on such basis, are respectively DENIED and OVERRULED; and (4) given the dismissal of the case, the two pending adversary proceedings, 17-00027 and 17-00030, will be dismissed.

DATED: June 12, 2019

_____
TERRY L. MYERS
U.S. BANKRUPTCY JUDGE